*514
 
 Opinion
 

 SIMS, Acting P. J.
 

 Defendant, the surviving husband of a patient who received extensive necessary hospital and medical care, supplies and services from the county-owned and -operated Santa Clara Valley Medical Center during the period from October 8, 1969, until her death December 23, 1969, has appealed from a stipulated judgment which awarded the plaintiff the sum of $10,894.40 and $9.50 costs admittedly due if the defendant failed to establish the affirmative defenses asserted by him.
 

 The trial court denied the county’s motion for summary judgment in an order which further recited, “The court makes its order specifying that the following issues are without substantial controversy and are deemed established against the defendant: [1] 1. The county owns and operates the Santa Clara Valley Medical Center. [H] 2. The agreement signed by defendant on October 8, 1969, is not subject to rescission. [1] 3. The statute of limitation is not a bar to the within action.”
 

 Following that order the parties entered into a stipulation, which after renumbering them as “1” and “2” set forth items “2” and “3” of the foregoing order, and continued as follows: “It Is Hereby Stipulated by and between plaintiff County of Santa Clara and defendant Anthony J. Vargas, through their respective counsel, that Judgment in the above-entitled cause be entered in favor of said plaintiff and against said defendant in the sum of $10,894.40 and for costs of suit in the amount of $9.50. [11] It Is Further Stipulated between the parties that defendant reserves the right to appeal the judgment entered hereon solely on the issues deemed established against defendant as set forth above. [H]It Is Further Stipulated between said parties that judgment be entered in accordance herewith upon application of either of the parties.”
 

 Judgment was entered accordingly and this appeal ensued.
 

 In his answer the defendant alleged that the action, filed November 8, 1974, was barred by the provisions of subdivision 1 of section 337, of section 343, and of section 345 of the Code of Civil Procedure, each of which prescribes a four-year statute of limitations. Section 345
 
 [1]
 
 being the
 
 *515
 
 more specific would govern if not otherwise inapplicable. (See
 
 Rose
 
 v.
 
 State of California
 
 (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].) In its motion for summaiy judgment the county asserted that section 345 was not applicable because the defendant’s liability was predicated upon a book account, evidenced by the hospital’s accounts receivable ledger which reflected payments on account up to and including April 29, 1974, and that under the provisions of subdivision 2 of section 337,
 
 [2]
 
 a four-year period commenced with that item. The county further contended that the defendant waived the statute of limitations by the terms of an agreement he executed when his wife was admitted to the hospital on October 8, 1969, and that the defendant was estopped from raising the four-year statute of limitations by his conduct in making a series of payments and the county’s reliance thereon in refraining from initiating legal proceedings at an earlier date.
 

 The trial court did not indicate the ground or grounds on which it concluded the statute of limitations was not a bar to the action. On appeal the defendant contends that none of the grounds asserted in the trial court are sustainable, and that the trial court erred in not finding that the action was barred after four years from the date of last treatment by the provisions of section 345.
 
 [3]
 

 I
 

 It is generally recognized that under the provisions of section 345 (see fn. 1 above) the state or county is barred from the recovery of money due on account of the support of a patient at state or county hospitals furnished more than four years prior to the commencement of an action
 
 *516
 
 to recover such sums. (See
 
 Dept. of Mental Hygiene
 
 v.
 
 McGilvery
 
 (1958) 50 Cal.2d 742, 752 [329 P.2d 689] [disapproved on other grounds
 
 Dept. of Mental Hygiene
 
 v.
 
 Kirchner
 
 (1964) 60 Cal.2d 716, 723 (36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353)];
 
 Dept. of Mental Hygiene
 
 v.
 
 Bank of America
 
 (1963) 220 Cal.App.2d 160, 161-162 [33 Cal.Rptr. 566];
 
 Dept. of Mental Hygiene
 
 v.
 
 Black
 
 (1961) 198 Cal.App.2d 627, 632 [18 Cal.Rptr. 78] [disapproved with
 
 McGilvery
 
 in
 
 Kirchner]; County of Los Angeles
 
 v.
 
 Read
 
 (1961) 193 Cal.App.2d 748, 753 [14 Cal.Rptr. 628];
 
 Estate of Setzer
 
 (1961) 192 Cal.App.2d 634, 640-641 [13 Cal.Rptr. 683] [disapproved with
 
 McGilvery
 
 and
 
 Black
 
 in
 
 Kirchner]; Estate of Phipps
 
 (1952) 112 Cal.App.2d 732, 739 [247 P.2d 409, 33 A.L.R.2d 1251]; and
 
 Estate of Jacobson
 
 (1942) 56 Cal.App.2d 255, 257-258 [132 P.2d 229].)
 

 None of the foregoing cases, other than
 
 Estate of Setzer,
 
 which is discussed below, involved a question of periodic payments under an agreement. Here the hospital submitted a declaration in which it was alleged, “On October 9, 1969, a credit interview was conducted by Sue Sollazi with Mr. Anthony Vargas. At that time a credit history was prepared. . . . Credit histories are prepared for each patient or guarantor at Valley Medical Center. At the time the credit history was taken, Anthony Vargas orally agreed to pay a minimum of $25.00 per month on charges incurred for the care of Aileen Vargas.” The defendant’s declaration states: “I . . . remember that I was asked how much I could pay each month on the account and I told them at least $25.00 per month”; and “ . . . I felt that I did owe the moneys which were incurred during the first three weeks of my wife’s treatment and decided to make payments on that portion of the account until that was taken care of and then deal with the hospital as to the balance on a good faith basis.” He also contended that the services rendered to sustain his wife’s life after her leg was amputated were not treatment for which he should be liable, but only experimentation. The record reflects that following his wife’s death and during the period in which he made payments that qualification was never communicated to anyone connected with the hospital, but only to his attorney in March 1970, who then advised him to terminate payments. Concededly the last payment was made and entered in the books of account of the hospital on April 29, 1974.
 

 Under the foregoing circumstances the plaintiff is entitled to bring the action as within the provisions of subdivision 2 of section 337 (fn. 2 above). (See
 
 Furlow P. B. Co.
 
 v.
 
 Balboa L. & W. Co.
 
 (1921) 186 Cal. 754, 762-763 [200 P. 625];
 
 Warda
 
 v.
 
 Schmidt
 
 (1956) 146 Cal.App.2d 234, 237-240 [303 P.2d 762];
 
 Gardner
 
 v.
 
 Rutherford
 
 (1943) 57 Cal.App.2d 874, 882-884 [134 P.2d 48];
 
 Kaupke
 
 v.
 
 Lemoore Canal & Irr. Co.
 
 (1937) 20
 
 *517
 
 Cal.App.2d 554, 560-561 [67 P.2d 407]; and
 
 Egan
 
 v.
 
 Bishop
 
 (1935) 8 Cal.App.2d 119, 123 [47 P.2d 500];
 
 Bailey
 
 v.
 
 Hoffman
 
 (1929) 99 Cal.App. 347, 350-352 [278 P. 498], Cf.
 
 Parker
 
 v.
 
 Shell Oil Co.
 
 (1946) 29 Cal.2d 503, 506 [175 P.2d 838];
 
 Parker
 
 v.
 
 Shell Oil Co.
 
 (1942) 55 Cal.App.2d 48, 55 [130 P.2d 158];
 
 Tillson
 
 v.
 
 Peters
 
 (1940) 41 Cal.App.2d 671, 674-676 [107 P.2d 434]; and
 
 Merchants’ Collection Agency
 
 v.
 
 Levi
 
 (1917) 32 Cal.App. 595, 597 [163 P. 870].)
 

 In the case first cited the court ruled: “The rule has long been settled in this state with reference to ‘a mutual, open and current account’ mentioned in subdivision 2, section 337 of the Code of Civil Procedure, that the statute runs from the date of the last item shown in the account [citation]. The evident purpose of the amendment, subdivision 2, section 337 of the Code of Civil Procedure, was to put an open book account upon the same basis. [H] Such r.n account is differentiated from an open, mutual and current account solely by the fact that to constitute an open, mutual and current account it was necessary that items other than cash appear as credits upon the account, whereas, in an open book account cash payments alone are sufficient to characterize the account as an ‘open book account.’ If we apply the rule so well established as to ‘a mutual, open and current account,’ it would follow that the four-year period of limitations runs from the date of the last payment, in this case August 13, 1914. In most of the states a partial payment upon an account tolls the statute. The rule is otherwise in this state, because of section 360 of the Code of Civil Procedure requiring a written acknowledgment, but it is a reasonable construction of the legislation fixing a different period of limitation upon an ‘open book account’ from an ordinary account to hold that the payment made and entered upon the open book account tolls the statute. It follows that the statute of limitations began to run on this account on August 13, 1914, and that the amended complaint filed May 15, 1918, was within the four years.” (186 Cal. at p. 763.)
 

 The creditor cannot change the applicable statutory period by merely entering a single charge in his books of account.
 
 (Merchants’ Collection Agency
 
 v.
 
 Levi, supra,
 
 32 Cal.App. at p. 597.) There, however, the court recognized that when the debtor makes payments on the account, as was done in this case, a different rule would apply. The decision states: “It seems to us quite clear that the only reasonable as well as the only proper grammatical construction to be placed upon the foregoing section of the code is that the only book account upon which an action may be commenced within four years under subdivision 2 thereof is a book account upon which there is a balance due. This would necessarily imply
 
 *518
 
 that the account should be one upon which the debtor had made payments which, being credited to him, would leave a balance due, and also which, being made by him, would indicate his desire and intent that the account should remain open.”
 
 (Id.)
 

 “Sums which become due under an express contract (such as rent under lease) are not ordinarily treated by the parties as items of an open account. [Citations.] If they are not so considered by the parties, one party cannot evade the bar of the statute of limitations by pleading an open, mutual, current account or book account. [Citation.] However, rent may by mutual understanding of the parties become an item in an open account; in such a case the cause of action is upon the account, not under the lease,
 
 (Gardner
 
 v.
 
 Rutherford
 
 (1943) 57 Cal.App.2d 874, 886 . . . and cases there cited.)”
 
 (Parker
 
 v.
 
 Shell Oil Co., supra,
 
 29 Cal.2d 503, 507. See also
 
 Parker
 
 v.
 
 Shell Oil Co., supra,
 
 55 Cal.App.2d 48, 55; and
 
 Tillson
 
 v.
 
 Peters, supra,
 
 41 Cal.App.2d 671, 674-677.) In the case cited in the last quotation the debtor had treated its obligations on oral lease and on a note as elements of an open book account, and the court held its assignee for the benefit of its creditors, therefore, could not assert the otherwise applicable periods of limitation. (See 57 Cal.App.2d at pp. 884-887.) Here the debtor by continuing payments recognized the balances on the account for which he was billed.
 

 It is asserted that by amending section 345 to add the exception contained in the latter part of the section (fn. 1 above; see Stats. 1905, ch. 381, §1, p. 487; Stats. 1921, ch. 475, § 1, p. 722; and Stats. 1943, ch. 177, § 1, p. 1071) the Legislature intended to bar the state, and since 1943 the county, from bringing any action more than four years after the support was furnished. Such a construction would carve out a restrictive exception from the first provisions which equate the time within which the state may sue with that granted to a private party. We hold, to the contrary, that the intent was to give the state a greater right than it might otherwise have, without impinging on any longer period which might result from the application of the first clause. In the first place it is generally stated that statutes of limitation do not apply against the state unless expressly made applicable.
 
 (People
 
 v.
 
 Chambers
 
 (1951) 37 Cal.2d 552, 559 [233 P.2d 557].) At the time of the amendment, as now, section 339 of the Code of Civil Procedure limited an action on an implied or oral contract to two years, and section 338 at all times has limited an action upon a liability created by statute to three years. In those cases in which there was no written contract or creation of and payments of an account, the rights of the state would have been cut off before four years. The exception reads that “actions . . .
 
 may
 
 be commenced at any time
 
 *519
 
 within four years after the accrual of the same.” If the intent had been to protect the debtor from a lengthier provision resulting from the application of the first clause the mandatory
 
 “must”
 
 could have been used.
 

 In
 
 Dept. of Mental Hygiene
 
 v.
 
 Black, supra,
 
 the court indicated that the four-year period of section 345 was not exclusive, but would be extended by the provisions of section 353 of the Code of Civil Procedure in the event of the death of the debtor (198 Cal.App.2d at pp. 632-633). In
 
 Dept. of Mental Hygiene
 
 v.
 
 Bank of America, supra,
 
 the department conceded that it could not avail itself of the tolling provisions of section 353 because it failed to file suit against the representative of the estate of the deceased debtor within a year after its appointment. In answer to the estate’s contention that the action was barred by the one-year period of section 353, the court noted that the provision is applicable only when necessary to extend the general statute of limitations and cannot be used to curtail it. (220 Cal.App.2d at p. 162. See
 
 Berger
 
 v.
 
 O’Hearn
 
 (1953) 41 Cal.2d 729, 732 [264 P.2d 10].) We so construe its provisions of the exception in section 345.
 

 In
 
 Estate of Setzer, supra,
 
 it was suggested that all charges for the care of the incompetent ward which were incurred more than four years prior to the filing of the state’s claim in objecting to the account should be barred by the four-year period contained in section 345. The court found that the Department of Mental Hygiene’s books of accounts disclosed that all items incurred over four years before were exceeded in amount by payments that had been made. It was, therefore, unnecessary to determine whether payments on account within the four years would subject the entire balance to suit (see 192 Cal.App.2d at pp. 640-641). “The cause of action is upon the account, not upon the separate charges which enter into it. When, therefore, four years have run from the date of the last entry in the account, action on the entire account is barred, but the action is not barred piecemeal as to the several items, because in an action on the book account they are all to be regarded as a part of one entire account and cause of action.”
 
 (Egan
 
 v.
 
 Bishop, supra,
 
 8 Cal.App.2d 119, 123.)
 

 The complaint filed November 8, 1974, alleges the incurring of an indebtedness between October 27 and December 23, 1969, and that the defendant waived the statute of limitations by agreement executed October 9, 1969. Defendant contends that since the complaint does not purport to be on an open book account, the plaintiff could not rely upon the provisions of subdivision 2 of section 337. The plaintiff relies upon
 
 *520
 
 the provisions of section 13 of article VI of the California Constitution which provides in pertinent part: “No judgment shall be set aside, or new trial granted, in any cause ... for any error as to any matter of pleading, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.” (See
 
 Baker
 
 v.
 
 Miller
 
 (1923) 190 Cal. 263, 267-268 [212 P. 11].) A more specific answer is found in the provisions of subdivision (b) of section 431.20 (cf. former § 462) which reads, “(b) The statement of any new matter in the answer, in avoidance or constituting a defense, shall, on the trial, be deemed controverted by the opposite party.” In
 
 London and S. F. Bank
 
 v.
 
 Parrott
 
 (1899) 125 Cal. 472 [58 P. 164], the court ruled: “Under section 462 of the Code of Civil Procedure the plea of the statute of limitations is to be deemed ‘controverted’ by the plaintiff, and whatever will defeat its effect may be shown upon the trial.” (125 Cal. at p. 489. See also 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 4, p. 1693, and § 905, p. 2495.) Evidence of the book account and defendant’s admission that he had been making the payments reflected in the account was properly received in connection with the motion for summary judgment.
 

 The trial court properly could have found that the action was maintainable under the provisions of subdivision 2 of section 337 as an action on a book account.
 

 II
 

 On October 8, 1969, the defendant admittedly signed and acknowledged an agreement to reimburse which read in pertinent part: “We or I (the use of the plural in this instrument to include the singular) hereby acknowledge that we, or members of our immediate family (used herein to mean spouse, parent, or child) have received relief, care, and maintenance and/or medical aid from the County of Santa Clara, State of California (hereafter called Promisee), and that we agree to make reimbursement for all aid and assistance rendered us, or members of our immediate family during all periods of our dependency, past, present, and future. [H] We Do Hereby Waive the limitation of any statute for the presentation of any claim for the repayment of said relief, care, and maintenance and/or medical aid how owing, or to come due in the future. . .”
 

 The parties to a contract may waive the running of the statute of limitations by express agreement.
 
 (Antioch College
 
 v.
 
 Barnhart
 
 (1942) 49 Cal.App.2d 171, 173 [121 P.2d 521], Cf. Code Civ. Proc., § 360.5, limiting
 
 *521
 
 the effective period of such a waiver, but excepting “any acknowledgment, promise, or any form of waiver which is in writing and signed by the person obligated and given to any county to secure repayment of indigent aid . . . .”)
 

 Defendant contends that the language “any statute for the prosecution of any claim” must refer to obligations requiring the presentation of a claim, and is not applicable to statutes prescribing the period within which a civil action may be commenced. He relies upon the general principle that any ambiguity or uncertainty in the terms of a contract must be construed against the party who prepared the contract.
 
 (Denio
 
 v.
 
 City of Huntington Beach
 
 (1943) 22 Cal.2d 580, 594 [140 P.2d 392, 149 A.L.R. 320] [disapproved on other grounds
 
 Fracasse
 
 v.
 
 Brent
 
 (1972) 6 Cal.3d 784 (100 Cal.Rptr. 385, 494 P.2d 9)].) We note, however, that Civil Code section 1654 which embodies the foregoing rule, further provides, that it applies “except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party.” Nor are we swayed by reference to section 313 of the Code of Civil Procedure, which refers to claims against public entities, and section 707.5 of the Probate Code. Although the former reference is indicative of the distinction between “the presentation of any claim” and the commencement of a civil action, it is clearly applicable to claims against public entities and not to claims by a public entity against a private party. The second section is of relatively recent origin. (Stats. 1968, ch. 1299, § 1, p. 2447, as amended Stats. 1970, ch. 547, § 1, p. 1055.) Prior to its enactment it was unnecessary to file a claim against the estate of a decedent for public support furnished to or at his request. (See
 
 Dept. of Mental Hygiene
 
 v.
 
 Black, supra,
 
 198 Cal.App.2d 627, 633.)
 

 In
 
 Turnboo
 
 v.
 
 County of Santa Clara
 
 (1956) 144 Cal.App.2d 728 [301 P.2d 992], the court had before it a waiver agreement which read, “I do hereby waive the limitation of any statute for the presentation of any claim for the repayment of said relief, care and maintenance and/or medical aid.” (144 Cal.App.2d at p. 729.) The court held that the agreement could not be enforced against successors in interest of the signer, who received aid, for obligations for services rendered to dependents of the deceased signer. It stated, “. . . [T]he language of the agreements clearly do not cover any debts except those for relief or medical aid incurred by the parties executing them; . . .”
 
 (Id.,
 
 at p. 734.) It was acknowledged that the agreements were effective to preserve the county’s rights for reimbursement for the aid furnished the person who executed the agreement. The opinion states: “These agreements clearly waive the statute of limitations for the aid incurred by the person signing
 
 *522
 
 and establish a lien for the aid then received and to be received and for any in the past they have personally received.” (144 Cal.App.2d at pp. 731-732.) We agree with that interpretation. Here, as distinguished from
 
 Turnboo,
 
 the defendant expressly undertook the liability for the aid furnished his dependent, and his waiver applies to that claim. The adoption of the new Probate Code section should not affect the established and recognized meaning of the clause.
 

 The foregoing conclusion is supported by the following rules of interpretation: “A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful” (Civ. Code, § 1636); “The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other” (§ 1641); and “A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties” (§ 1643). (See also
 
 Harris
 
 v.
 
 Klure
 
 (1962) 205 Cal.App.2d 574, 577-578 [23 Cal.Rptr. 313];
 
 Pacific Tel. & Tel. Co.
 
 v.
 
 City of Lodi
 
 (1943) 58 Cal.App.2d 888, 892 [137 P.2d 847]; and
 
 Erskine
 
 v.
 
 Upham
 
 (1942) 56 Cal.App.2d 235, 246 [132 P.2d 219].)
 

 Defendant further claims that in any event there was a triable issue of fact as to whether the defendant, as alleged in his answer, was entitled to and had rescinded the agreement to reimburse because of undue influence consisting of the county’s taking a grossly oppressive and unfair advantage of his necessity and distress in securing aid for his ailing wife. (See Civ. Code, § 1575, subd. 3.) His declaration alleges facts supporting the fact that he was unnerved and emotionally upset and distracted at the time he signed the agreement. He, however, fails to explain why he took no steps to rescind the agreement until after April 29, 1974 (see fn. 3 above), other than his undisclosed intention to pay what he subjectively considered the proper compensation for a portion of the services received by his wife.
 

 The court properly found the agreement was not subject to rescission, and properly could have found that the defendant waived the statute of limitations.
 

 Ill
 

 In the declarations filed in support of the motion for summary judgment it was alleged, “During the period October 9, 1969 through
 
 *523
 
 April 29, 1974, on those accounts where patients or guarantors were not cooperative and did not make periodic payments it was the practice of the patient accounts section to refer such accounts to private collection agencies for action. As periodic payments were being made on Account #9-2938 35 as reflected in the preceding paragraph, said account was not referred to a private collection agency.” For his part the defendant acknowledged, “About once every two or three weeks, the hospital gave me statements of my wife’s account which were meaningless to me. However, I commenced making payments about October 9, 1969, and continued making payments thereafter.” He admitted making his last payment on April 29, 1974. He claimed, “I felt that I did owe the moneys which were incurred during the first three weeks of my wife’s treatment and decided to make payments on that portion of the account until that was taken care of and then deal with the hospital as to the balance on a good faith basis.” He nowhere alleges that he communicated to the hospital, as distinguished from his attorney, his intent to pay only a portion of the bill.
 

 On the basis of the foregoing uncontradicted facts, the county asserted below and now contends that if the provisions of section 345 are otherwise applicable (see part I), the defendant is estopped to claim that the action is barred because it was commenced more than four years after the furnishing of the services to his dependent. (See
 
 Carruth
 
 v.
 
 Fritch
 
 (1950) 36 Cal.2d 426, 431-434 [224 P.2d 702, 24 A.L.R.2d 1403];
 
 Holland
 
 v.
 
 Nelson
 
 (1970) 5 Cal.App.3d 308, 313 [85 Cal.Rptr. 117];
 
 Morgan
 
 v.
 
 International Aviation Underwriters, Inc.
 
 (1967) 250 Cal.App.2d 176, 180 [58 Cal.Rptr. 164];
 
 Estate of Pieper
 
 (1964) 224 Cal.App.2d 670, 690-691 [37 Cal.Rptr. 46]; and
 
 Industrial Indem. Co.
 
 v.
 
 Ind. Acc. Com.
 
 (1953) 115 Cal.App.2d 684, 689-690 [252 P.2d 649], Cf.
 
 Estate of Jacobson, supra,
 
 56 Cal.App.2d 255, 258-260.)
 

 Although the county did not plead estoppel it may raise it to counter the defendant’s plea of the statute of limitations. “As a general rule when estoppel is an element of the cause of action it must be specially pleaded. [Citations.] This rule is particularly applicable where a plaintiff relies upon estoppel to avail against a defense which would otherwise appear upon the very face of the complaint. [Citations.] The rule does not apply, however, under the principle that a complaint need not negative or anticipate any defense on the part of the defendant, where estoppel is relied upon by the plaintiff to meet new matter affirmatively pleaded in the answer, or where it is made relevant by a contention raised therein. [Citations.]”
 
 (Estate of Pieper, supra,
 
 224 Cal.App.2d 670, 691.)
 

 
 *524
 
 The applicable rules for applying estoppel are collated in
 
 Estate of Pieper, supra,
 
 as follows: “It is well settled that the doctrine of estoppel
 
 in pais
 
 is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations. [Citations.] Apropos to this rule are the following established principles: A person, by his conduct, may be estopped to rely on the statute; where the delay in commencing an action is induced by the conduct of the defendant, it cannot be availed of by him as a defense; one cannot justly or equitably lull his adversary into a false sense of security and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his conduct as a defense to the action when brought; actual fraud in the technical sense, bad faith or intent to mislead are not essential to the creation of an estoppel, but it is sufficient that the defendant made misrepresentations or so conducted himself that he misled a party, who acted thereon in good faith, to the extent that such party failed to commence the action within the statutory period; a party has a reasonable time in which to bring his action after the estoppel has expired, not exceeding the period of limitation imposed by the statute for commencing the action; . . .” (224 Cal.App.2d 670, 690.)
 

 In
 
 Estate of Pieper, supra,
 
 the court continued as follows: “. . . whether an estoppel exists—whether the acts, representations or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the party relied thereon to his prejudice—is a question of fact and not of law. [Citations.]”
 
 (Id.,
 
 pp. 690-691. See also
 
 Morgan
 
 v.
 
 International Aviation Underwriters, Inc. supra,
 
 250 Cal.App.2d 176, 189; and
 
 Industrial Indem. Co.
 
 v.
 
 Ind. Acc. Com., supra,
 
 115 Cal.App.2d 684, 690.) Nevertheless, the county asserts that the uncontradicted evidence reflects an estoppel within the principles set forth above, and that a summary judgment on that issue would have been proper. (Code Civ. Proc., § 437c;
 
 Craig Corp.
 
 v.
 
 County of Los Angeles
 
 (1975) 51 Cal.App.3d 909, 914-915 [124 Cal.Rptr. 621]; and
 
 Keylon
 
 v.
 
 Kelley
 
 (1961) 188 Cal.App.2d 490, 492-493 [10 Cal.Rptr. 549].)
 

 Although the evidence appears clear, since the uncontradicted facts establish liability on the theories that the defendant’s obligation is on a book account, and that he has waived the statute of limitations, we do not pursue the theory of estoppel further. If the estoppel must rest on defendant’s oral agreement to make payments, factual issues might be involved. If it does not, it is questionable whether new partial payments (not part of a book account) could create an estoppel as a matter of law.
 

 
 *525
 
 In closing we note that the judgment in this case is not a true summary judgment. On the basis of issues resolved by the trial court, the parties stipulated to the judgment. We have merely found in parts I and II that the court had proper grounds to make the findings it did.
 

 The judgment is affirmed.
 

 Elkington, J., and Lazarus, J.,
 
 *
 
 concurred.
 

 [1]
 

 Code of Civil Procedure section 345 provides: “The limitations prescribed in this chapter apply to actions brought in the name of the State or county or for the benefit of the State or county, in the same manner as to actions by private parties, except that actions for the recovery of money due on account of the support of patients at State or county hospitals may be commenced at any time within four years after the accrual of the same.”
 

 [2]
 

 Section 337 provides in pertinent part: “Within four years: . . . [H] 2. An action to recover (1) upon a book account whether consisting of one or more entries; . . . ; provided, however, that where an account stated is based upon an account of one item, the time shall begin to run from the date of said item, and where an account stated is based upon an account of more than one item, the time shall begin to run from the date of the last item. ...”
 

 [3]
 

 Although defendant reserved the right to attack the trial court’s conclusion that the agreement signed by him on October 8, 1969, is not subject to rescission, he only considers the issue peripherally in connection with the issue of the waiver of the statute of limitations. His sole reference is the following statement: “A serious question was raised in the declaration of appellant Vargas filed in opposition to respondent’s motion for summary judgment as to the circumstances surrounding the signing of the ‘Waiver’ ... in that appellant was claiming undue influence, certainly a question of fact.” He fails to meet the county’s contentions, advanced below, that it would be inequitable to rescind the agreement after the services had been furnished, and that, as a matter of law, the right to rescind is barred by the passage of time, over five years, in which the defendant voluntarily made payments, both before and after consulting an attorney. (See Code Civ. Proc., § 337, subd. 3.)
 

 *
 

 Retired superior court judge sitting under assignment by the Chairperson of the Judicial Council.